804 F.2d 678
 41 Empl. Prac. Dec. P 36,564
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dr. Angel PEREZ-HUERTA, Appellant,
v.
PIEDMONT HEALTH CARE CORPORATION, Appellee.
 No. 85-1967.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 12, 1986.
Decided Oct. 29, 1986.
 
 Dr. Angel Perez-Huerta, appellant pro se.
 James B. Spears, Jr., Leo H. Hill, for appellee.
 D.S.C.
 AFFIRMED
 Before WIDENER and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Dr. Angel Perez-Huerta appeals from a judgment for Piedmont Health Care Corporation (Piedmont) in his suit alleging employment discrimination on the basis of national origin. Perez-Huerta alleges Piedmont violated Title VII, 42 U.S.C. Secs. 2000e et seq. by refusing to hire him for any technical or paramedical positions with the corporation after Perez-Huerta filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). We affirm.
 
 
 2
 Perez-Huerta is a Mexican-American citizen of the United States, educated and trained as a physician and surgeon in Mexico, Europe, and the United States. Piedmont operates a health maintenance organization. In 1971, before Piedmont hired any medical, management or administrative staff, Perez-Huerta made several contacts with members of Piedmont's board of directors regarding possible employment by Piedmont. Piedmont subsequently hired Martin Hadelman as executive director in February 1972, and Terrell Carver, M.D., as medical director in May 1972. These persons were responsible for hiring Piedmont's medical and administrative staff.
 
 
 3
 On March 20, 1972, Perez-Huerta submitted to Piedmont a letter and resume in application for employment in a paramedical position. Specifically, his letter stated he sought to become employed as a "Physician Assistant" or in "any other position in the project for which I am trained and qualified." Perez-Huerta subsequently had two interviews with Carver in May 1972. On May 23, 1972, Carver asked Perez-Huerta to draft a job description stating duties he would expect to perform should he be employed as a physician assistant. Perez-Huerta declined to prepare a job description prior to receiving a specific offer of employment. There was no further communication between Carver and Perez-Huerta. Piedmont contemplated hiring a physician assistant upon the passage of state legislation authorizing such positions. After the proposed legislation failed to be enacted in 1972 or 1973, Piedmont did not at that time employ such personnel. After Perez-Huerta's employment application of March 20, 1972, he did not reapply for employment again at any time prior to filing the present action in 1977.
 
 
 4
 During the summer of 1973, Piedmont received notice that Perez-Huerta had filed a charge of discrimination against it. As a result of its investigation, the EEOC in October 1973 issued an administrative determination that there was reasonable cause to believe Piedmont had retaliated against Perez-Huerta on account of his national origin by "remov[ing him] from consideration from all positions." Subsequent efforts at conciliation by the EEOC failed to resolve the dispute. This suit was subsequently filed on June 21, 1977.
 
 
 5
 After considering the parties' oral and documentary evidence, including a post-trial deposition of the EEOC investigator submitted by Perez-Huerta as rebuttal testimony, the district court issued lengthy findings of fact and conclusions of law. Based on the testimony of Hadelman, the district court determined that Piedmont had in early 1973 instituted a six-month "active period" for employment applications, on the assumption that recent applicants were more likely to be available and interested in employment. The court found that Perez-Huerta's failure to have a current application after March 24, 1973, the date Piedmont first came under Title VII jurisdiction, as well as Perez-Huerta's lack of medical licensure in South Carolina or in any other state were the true reasons for his unemployment by Piedmont. Although Piedmont had in 1973 hired other persons for the positions of nurse and medical laboratory technician, Perez-Huerta also was not licensed to perform either of these jobs, as were the successful applicants.
 
 
 6
 The court further found that the evidence did not support Perez-Huerta's contention that Piedmont had employed other unlicensed physicians. Entries on several such physicians in the American Medical Association Directory, introduced by Perez-Huerta at trial, were insufficient to rebut Hadelman's testimony regarding the licensure status of the several physicians in question. Furthermore, the uncontradicted affidavit of the Executive Director of the South Carolina Board of Medical Examiners (Board) established that each doctor was licensed in at least one other state prior to his employment by Piedmont, and that all but one physician obtained a South Carolina license while employed by Piedmont. The latter physician was eligible for a South Carolina license under the state's reciprocity provisions, but left Piedmont's employ prior to completing the necessary application procedure. Perez-Huerta, in contrast, had not obtained a license to practice medicine in South Carolina or in any other state of the United States. The court determined the evidence here did not establish the requisite causal connection between Perez-Huerta's protected activity of filing an administrative charge of discrimination, and Piedmont's unwillingness to employ Perez-Huerta in any of the physician or paramedical positions it filled after March 24, 1973. See Ross v. Communications Satellite Corp., 759 F.2d 355, 365-66 (4th Cir.1985).
 
 
 7
 Our review of the trial exhibits, the trial transcript, and the post-trial submissions persuades us the district court's findings are not clearly erroneous. See Anderson v. City of Bessemer City, North Carolina, --- U.S. ----, 53 U.S.L.W. 4314, 4317 (March 19, 1985); Pullman-Standard v. Swint, 456 U.S. 273, 285-90 (1982).
 
 
 8
 Perez-Huerta has failed to prove a retaliatory refusal to hire under the standard we enunciated in Ross, 759 F.2d at 365. As the district court pointed out, even assuming Perez-Huerta had maintained a current application with Piedmont for any vacancies occurring after March 24, 1973, the uncontradicted evidence establishes that Piedmont did not fill any paramedical positions that did not require a South Carolina license, registration, or certification. Assuming further that Perez-Huerta had established a prima facie case of discrimination or retaliation, i.e., that Piedmont had filled positions for which Perez-Huerta was qualified and had applied, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), or had refused him employment because of his protected activity, see Ross, 759 F.2d at 365, it is apparent Piedmont satisfied its burden of rebuttal under McDonnell Douglas standards. As we have noted, "[t]he employer is not required to prove the absence of a retaliatory motive, but only to raise a 'genuine issue of fact,' ... as to whether retaliation for protected activity occurred." Ross, 759 F.2d at 365.
 
 
 9
 Here Perez-Huerta failed to show by a preponderance of the evidence that Piedmont's articulated explanations for its refusal to hire him were a pretext for discrimination. The post-trial deposition of the EEOC investigator, in which the investigator recounted her interview with Hadelman, supported Perez-Huerta's claim that Piedmont had declined to employ him in retaliation for his charge. However, this evidence simply fell short of the standard set forth in Ross, which requires a plaintiff to "show that the adverse action would not have occurred" but for "the protected conduct." Id. The district court correctly concluded that Perez-Huerta was unable to satisfy his ultimate burden of proof.
 
 
 10
 On appeal, Perez-Huerta claims the court erred in permitting Hadelman to testify since Hadelman was no longer employed by Piedmont. Hadelman was clearly competent to testify concerning events which were the subject of Perez-Huerta's complaint, which occurred in 1972 and 1973 during Hadelman's tenure as executive director. Perez-Huerta also protests the district court's denial of a subpoena duces tecum directed toward the South Carolina Board of Medical Examiners (Board) and a post-trial hearing at which Perez-Huerta could further explore the matter of licensure of other physicians hired by Piedmont. It is apparent Perez-Huerta no longer disputes that the physicians in question were licensed in South Carolina or elsewhere. Rather, he now wishes the court to review the state licensing procedure. He argues that several of these physicians should not have been licensed for various reasons ranging from a history of mental health problems to alcoholism, or because of other alleged deficiencies in their professional records. The Board of Medical Examiners has never been a defendant in this action. The basic facts concerning these doctors' licensure have been established; the propriety of that process is clearly beyond the scope of the present lawsuit. Moreover, Perez-Huerta had ample time to seek additional information from the Board prior to the trial of this action in 1985. Further inquiry into the Board's decisions regarding the other physicians employed by Piedmont was irrelevant to Perez-Huerta's suit, and the district court did not err in denying the subpoena duces tecum or the additional hearing.
 
 
 11
 Finally, Perez-Huerta protests the district court's refusal to be persuaded by the EEOC determination that there existed reasonable cause to believe he had been discriminated against. Prior administrative findings are ordinarily not entitled to preclusive effect in a subsequent discrimination suit. Rosenfeld v. Department of Army, 769 F.2d 237, 239 (4th Cir.1985). In its factual findings the district court fully accounted for the investigator's deposition testimony regarding her interview with Hadelman and the rest of her investigation; the evidence simply was not as strong as Perez-Huerta believed. The EEOC ruling was not dispositive of this litigation. See Ross, 759 F.2d at 363 (EEOC proceedings, while relevant, are no substitute for independent judgment of the district court). See also Georator Corp. v. Equal Employment Opportunity Commission, 592 F.2d 765, 769 (4th Cir.1979) (de novo trial required in Title VII action).
 
 
 12
 Having carefully reviewed the record and all Perez-Huerta's claims of error, we conclude the judgment of the district court was proper. Because the record and other materials before the Court indicate it would not significantly aid the decisional process, we dispense with oral argument and affirm the judgment below.
 
 
 13
 AFFIRMED.